```
              UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
                    PEORIA, ILLINOIS

JASON DALLEFELD,                    )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )  2015-CV-01244
                                    )
THE CLUBS AT RIVER CITY, INC.,      )
                                    )
Defendant.                          )
```

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE**

Plaintiff, Jason Dallefeld, by his attorneys, Ashton N. Nowlan and Colleen R. Lawless of Londrigan, Potter & Randle, P.C., and in Response to Defendant's Motion in Limine, states as follows:

I.  Argument

On August 7, 2017, Defendant filed a motion in limine seeking to prohibit and/or allow testimony as it relates to certain items. Each will be addressed in turn:

1. To provide to each juror bank calendar pages to allow note taking.

Plaintiff objects to providing jurors with blank calendar pages. The calendar pages would be prejudicial to both parties in that jurors will not take their own notes or rely on their own memory as it relates to the testimony elicited at trial. Additionally, the testimony elicited and the documents admitted into evidence will include dates in which the jurors will be

able to create their own timeline of events if they so choose. Thus, Defendant should be barred from providing each juror with blank calendar pages to allow note taking.

    2. <u>To admit testimony of Jessica Siefken regarding Plaintiff's theft conviction.</u>

As set forth in more detail in Plaintiff's Memorandum in Support of his Motion in Limine, No. 7, Defendant should be barred from eliciting testimony from Jessica Siefken regarding the facts of Plaintiff's misdemeanor theft conviction as it would be extremely prejudicial to Plaintiff. The only reason Defendant would want to elicit such testimony would be to shift the focus of the attention from the events at issue in the instant case to Plaintiff's conviction in the previous case.

Thus, all evidence relating to Plaintiff's conviction, with the exception of the crime charged, the date, and the disposition should thus be excluded as irrelevant, immaterial, and impermissibly prejudicial.

    3. <u>To admit testimony of Matt Clarke that Dallefeld reported he lifted weights at The Clubs while he was taken off duty by Blair Rhode, M.D.</u>

As set forth in more detail in Plaintiff's Memorandum in Support of his Motion in Limine, No. 1, Matt Clarke should be barred as a witness because he was disclosed extremely late, in violation of the discovery rules. Although Defendant attempts to argue that Plaintiff knew of Matt Clarke and that both Ms.

2

Robinson and Mr. O'Connell were asked about him at their depositions, at no time was Mr. Clarke's knowledge regarding Plaintiff lifting weights while he was off duty disclosed. Plaintiff asked Ms. Robinson and Mr. O'Connell about Mr. Clarke in relation to Defendant's discovery responses which stated that Mr. Clarke was one of the individuals who "replaced Plaintiff or assumed any of his job responsibilities." (*See* Plaintiff's Memorandum in Support of MIL, Ex. 2, p.6-7).

As such, Mr. Clarke should be barred as a witness.

4. <u>To admit Dallefeld's Charge of Discrimination, Defendant's Exhibit 1.</u>

As set forth in more detail in Plaintiff's Memorandum in Support of his Motion in Limine, No. 8, Defendant should be barred from using Plaintiff's EEOC Charge of Discrimination as an Exhibit at trial. The only reason Defendant would mention Plaintiff's charge of discrimination and/or the findings and Notice of Right to Sue regarding the charge would be to show Plaintiff is litigious. *See Benders v. Bellows & Bellows, P.C.*, 2009 WL 1177066 (N.D. Ill. April 29, 2009)(granting motion in limine barring prior claim because any relevance was substantially outweighed by the danger of unfair prejudice associated with painting Plaintiff as litigious).

Additionally, Defendant should be barred from using the charge to impeach Defendant because Dallefeld's EEOC charge was

completed as a layperson, rather than by a lawyer. As such, he did not need not allege each and every fact that combines to form the basis of each claim in his complaint. *See Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992).

Thus, Defendant should be barred from using Plaintiff's Charge of Discrimination as an exhibit at trial.

5. <u>To admit Defendant's timeline, Exhibit 16.</u>

As set forth in more detail in Plaintiff's Memorandum in Support of his Motion in Limine, No. 11, Defendant should be barred from using Exhibit No. 16, which is a demonstrative timeline, at trial. First, Plaintiff fears that the timeline will mislead the jury because not all relevant date events are included and due to the identification of certain events. Moreover, Plaintiff believes Exhibit No. 16 would be prejudicial to both parties in that jurors will not take their own notes or rely on their own memory as it relates to the testimony elicited at trial.

6. <u>To admit the Final Order in *People v. Dallefeld*, Case No. 15-CM-1268, Defendant's Exhibit 12 (with redactions).</u>

As set forth in more detail in Plaintiff's Memorandum in Support of his Motion in Limine, No. 7, Defendant should be prohibited from mentioning anything beyond the crime charged, the date and the disposition of Plaintiff's theft conviction.

4

Additionally, this should only be done by Defendant in its cross-examination of Plaintiff. Defendant should not be allowed to offer Exhibit No. 12 (Final Order of Conviction) in to evidence. Again, Defendant's Ex. No. 12 would only be used to enflame the passions of the jury against Plaintiff and improperly shift the focus of the trial away from the actions of Defendant.

7. <u>To admit the Declaration of Blair Rhode, M.D., Defendant's Exhibit 6</u>

Plaintiff objects to Dr. Rhode's Declaration being used as a trial exhibit. Witnesses can be impeached using prior declarations or have their memories refreshed with same. However, the declaration itself is not a proper exhibit to be admitted in evidence at trial.

Additionally, contrary to Defendant's assertion, the Declaration is not a complete summary of Dr. Rhode's treatment of Plaintiff. The Declaration's primary purpose was to clarify issues and arguments Defendant made in its Motion for Summary Judgment regarding Dr. Rhode's handwriting on Plaintiff's work status reports.

Thus, Defendant should be barred from admitting Exhibit 6 in evidence at trial.

8. <u>To admit Notice of Claim to Benefit Chargeable Employer, Defendant's Exhibit 14, with redactions</u>

As set forth in more detail in Plaintiff's Memorandum in Support of his Motion in Limine, No. 2, the fact that Plaintiff applied for unemployment benefits and the date thereof may be relevant evidence in this case. However, the amount of benefits and the duration of benefits are collateral and should not be presented to the jury or otherwise pursuant to the collateral source rule. Plaintiff therefore agrees to the redaction of information regarding the amount and duration of benefits on Defendant's Exhibit 14.

9. <u>To exclude testimony, medical notes (Plaintiff's Exhibit 16), or other evidence from Blair Rhode, M.D. that Dallefeld did not want to (or could not) miss work or have surgery due to financial distress or financial needs or that he would be forced to live on the streets</u>

Plaintiff's Exhibit 16 should be admitted over Defendant's objections. First, it is anticipated that one of Defendant's defenses/theories will be an attempt to show that Plaintiff was the sole decision maker as it relates to when his knee surgery was going to be performed and what his work duty status would be at any given time. As such, information relating to the timing aspect of why Plaintiff's surgery was delayed is relevant and is necessary to rebut any such assertions by Defendant.

Dr. Rhode's medical notes indicate he was waiting for authorization to perform the surgery on Plaintiff's knee and, as

6

noted, insurance denial of said surgery was an issue. The fact that the surgery was not performed because it had not been authorized is relevant to rebut any assertions Defendant may make to the contrary.

Additionally, Dr. Rhode testified at his deposition that a patient's work duty status is an interactive process and that there are a variety of scenarios where a patient's input could affect his decision as to their duty status. Thus, the fact that Plaintiff had financial concerns/issues is relevant and Dr. Rhode should be allowed to testify regarding his assessment of Plaintiff, including the objective and subjective assessments, and his recommendation as to Plaintiff's work duty status.

Thus, the following information should not be redacted from Plaintiff's medical records:

a. any references to patient's financial situation;
b. information regarding Plaintiff's surgery/access to medical treatment being delayed due to insurance denial;
c. Dr. Rhode's notes regarding Plaintiff's attempt to go back to work on modified duty and that his employer told him to get his knee fixed; and
d. Dr. Rhode's notes regarding Plaintiff's job interviews.

Plaintiff will agree to the redaction of the following entry relating to Plaintiff's former employer on May 8, 2013 (p.68-69 of Defendant's Exhibit 5):

> "I also recognize that the fact that the patient discussed outline factors that may have affected his medical documents and lack of treatment. This is based upon the fact that his employer told him he could not access to medical

7

care through the companies workers compensation policy. He was told that he had to utilize his own insurance. This resulted in a lack of access to medical care."

Plaintiff will also agree to redact the following entry on July 25, 2012(p. 50 of Defendant's Exhibit 5):

"He states that his employer never submitted his injury form to worker's compensation."

"He states that he recently realized his workers compensation right and, therefore, has sought to gain access to medical treatment for which he has been denied over the last 2 years 11 months by his employer due the fact that his employer never submitted his work injury to the insurance carrier."

"When asked why he has taken so long to seek treatment, Jason states that he did not realize his rights until recently."

As set forth above, certain redactions sought by Defendant should be denied, except for redactions relating to Plaintiff's former employer and its decisions regarding workers' compensation.

10. To exclude any testimony from Blair Rhode, M.D. that Dallefeld suffered an impairment or serious health condition

Dr. Rhode should be able to testify regarding whether or not Plaintiff's knee injury was a physical impairment and/or a serious health condition. Dr. Rhode was disclosed as Plaintiff's treating physician in Plaintiff's Rule 26(a)(2) witness disclosures. The relevant portions of Plaintiff's disclosures are as follows:

8

B. Written Report

A written report is not required by this expert as he is not a retained expert or specifically employed to provide expert testimony in this case.

C. Disclosure of Subject Matter and Opinions

Dr. Blair Rhode, M.D. was Plaintiff's treating physician with Orland Park Orthopedics Center for Sports Medicine. To the extent that the aforementioned doctor's opinions are known to Plaintiff's counsel, the same are contained in the medical records that are in Defendant's possession and reasonable assumptions from the records. It is anticipated, but not known for sure, that Dr. Rhode will testify regarding his qualifications as a medical doctor and the care and treatment rendered to Plaintiff while he was employed by Defendant including, but not limited to, Plaintiff's knee injury/medical condition. It is further anticipated, but not known for sure, that Dr. Rhode will testify that Plaintiff suffered from a serious health condition within the meaning of the FMLA during the relevant times. It is further anticipated, but not known for sure, that Dr. Rhode will testify that Plaintiff suffered from a disability within the meaning of the ADA. It is anticipated that Dr. Rhode will further testify that he provided Plaintiff with off work documentation due to Plaintiff's serious health condition and/or disability for all relevant dates.

(Ex. 1). Dr. Rhode was disclosed as it relates to his treatment of Plaintiff while he was employed by Defendant including, but not limited to, Plaintiff's knee injury/medical condition. Additionally, he was disclosed as it relates to his testimony regarding Plaintiff's serious health condition and disability under the FMLA and ADA during the time he treated Plaintiff.

Dr. Rhode is permitted to testify regarding the observations and opinions he formed during the course of his treatment of Plaintiff because he is not required to submit a written report under FRCP 26(a)(2). *See E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013)(A treating physician can provide an expert opinion without submitting a written report if the physician's opinion was formed during the course of the physician's treatment, and not in preparation for litigation.).

Therefore, any objections by Defendant regarding Dr. Rhode's testimony as to his opinions and observations during the course of his treatment, including whether Plaintiff's knee injury was a physical impairment or serious health condition, should be overruled.

> 11. To exclude any testimony or medical notes (Plaintiff's Exhibit 16) from Blair Rhode, M.D. that Dallefeld's knee injuries actually occurred while working at The Clubs at River City

Any injuries that Plaintiff reported to Dr. Rhode during his employment with Defendant are relevant to this case as they specifically relate to the workers' compensation claims Plaintiff filed against Defendant. Plaintiff's claims were filed as a result of the four injuries he sustained at the Clubs, which were also reported on Defendant's First Report of Injury Forms (Plaintiff's Trial Exhibit No. 9).

Additionally, portions of Plaintiff's medical records which state Plaintiff suffered a work-related injury should not be redacted. This information is relevant because it explains the cause of Plaintiff's injuries/symptoms and his need for treatment, including Dr. Rhode's suggested plan of treatment for Plaintiff and his decisions regarding Plaintiff's work duty status.

Thus any medical notes or testimony regarding Plaintiff's knee symptoms being secondary to an injury while at work or regarding the injuries Plaintiff's sustained to his right knee while working for Defendant should be admitted over Defendant's objection.

12. <u>To exclude evidence, testimony, argument or recovery as to Plaintiff's ADA reasonable accommodation claim</u>

As set forth in more detail in Plaintiff's Memorandum in Support of his Motion in Limine, No. 9, Defendant should not be able to assert a defense that Plaintiff failed to exhaust his administrative remedies as to his reasonable accommodation claim on the eve of trial. First, Defendant has never raised this defense once during litigation. In fact, Defendant admitted in its Answer to Plaintiff's Complaint that all jurisdictional prerequisites to the institution of Plaintiff's lawsuit had been fulfilled, and *Plaintiff had exhausted his administrative remedies as required by law*. (d/e 6, p.6, ¶33.; emphasis added).

Additionally, the scope of a Title VII or IDHR charge is broad and includes all claims that are within the written charge or are like or reasonably related to the allegations in the charge. *See Davis v. Harris*, 03-3007, 2006 WL 3513918, at *5-6 (C.D. Ill. Dec. 5, 2006). Here, Plaintiff's charge clearly put Defendant on notice of his claims under the ADA.

Finally, Defendant itself admitted Plaintiff's charge put it on notice of Plaintiff's reasonable accommodation claim through its position statement sent to the EEOC. Thus, Defendant should be barred from asserting said defense on the eve of trial.

13. <u>To exclude portions of Plaintiff's Exhibit 3 that do not deal with the claims in this case, including pages RC00195-RC00199</u>

Plaintiff agrees to remove p. 195 from Plaintiff's Exhibit 3 (Sexual Harassment) and to redact the bottom portion of p. 196 (Fair Labor Standards Act). However, Plaintiff objects to the removal of the remaining pages and/or sections of Exhibit 3. Pages 196-199 discuss Defendant's handling of employee medical records (p. 196), disability discrimination (p. 197), employee personnel files and the handling of same (p. 198), and Defendant's termination guidelines (p. 199). All of these issues are relevant to the instant case and should therefore be admitted over Defendant's objection.

14. <u>To exclude Plaintiff's Exhibit 4</u>

Plaintiff's Resume is relevant to show his prior experience when hired by Defendant, as well as that he was qualified to perform his job as Defendant's Director of Membership Sales. Thus, Plaintiff's Exhibit 4 should be admitted over Defendant's objection.

15. <u>To exclude from Plaintiff's Exhibit 18 the final six lines of RC00155.</u>

Plaintiff agrees to redact the final six lines of Exhibit 18 (text messages between Plaintiff and Dan O'Connell), to include, "FYI one of the Peoria News Reports called me and wants to do an interview about my experience with work comp. Seems kinda strange haha."

16. <u>To exclude Plaintiff's Exhibit 19</u>

Plaintiff agrees to remove Exhibit 19 (Plaintiff's job search efforts) on the condition that Defendant does not assert any arguments or provide any evidence, in any form, as it relates to Plaintiff's failure to mitigate his damages. Plaintiff reserves the right to use Exhibit 19, if Defendant mentions, alludes to or asserts that Plaintiff failed to mitigate his damages. Plaintiff also reserves the right to use Exhibit 19 to refresh a witness's recollection, if necessary.

17. <u>To exclude Plaintiff's Exhibits 22-24</u>

Defendant claims that Luke Burton was not similarly situated to Plaintiff. However, in its own answers to Plaintiff's Interrogatories, Defendant admitted that Mr. Burton was one of the individuals who "replaced Plaintiff or assumed any of his job responsibilities."(See Plaintiff's Memorandum in Support, Ex. 2, p.6-7). Additionally, Lisbeth Robinson testified at her deposition that Mr. Burton's position was sales and membership services and MOD on weekdays M-F. (Ex. 2, p. 89). The job description given to Mr. Burton also includes similar duties as Plaintiff's job description, including member services, manager on duty, and membership sales. (Compare Ex. 3 (Plaintiff's job description) to Ex. 4(Mr. Burton's job description)).

Mr. Burton's Work Status Reports, Plaintiff's Exhibit 23, are also necessary because Mr. Burton has worked on modified duty with restrictions throughout his employment with Defendant, as well as in his current position. The work status reports are the same form as the work status reports Plaintiff received from Dr. Rhode. As such, Mr. Burton's work status reports are relevant to show that Defendant allowed Mr. Burton to work in a similar position as Plaintiff with modified duty restrictions, yet would not allow Plaintiff to do the same.

Finally, Mr. Burton's unemployment claims are absolutely relevant to the instant case. Mr. Burton was continuously employed by Defendant from May 4, 2014 to the present. (Ex. 5, pp. 60; 62-63). Mr. Burton filed two unemployment claims against Defendant, one on September 14, 2014 and one on January 18, 2015, both of which were filed while Mr. Burton was still employed by Defendant.

Here, it is anticipated that Defendant will argue it believed Plaintiff quit when he filed for unemployment benefits. Defendant stated in its Memorandum in Support of Motion in Limine that it would be using Defendant's Exhibit No. 14 (Plaintiff's unemployment claim) to show the state of mind of its decision makers and the reasons they took the actions they did regarding Plaintiff. (d/e 37, p.4, ¶H).

However, when Dan O'Connell was asked about Mr. Burton's similar unemployment claim situation, he testified he did not believe Mr. Burton quit when he filed for unemployment benefits while still employed by the Clubs. (Ex. 5, p. 111).

Thus, for the reasons set forth above, Plaintiff's Exhibits 22-24 are necessary for trial, including to rebut Defendant's anticipated defenses, and should be admitted over Defendant's objections.

18. <u>To exclude Plaintiff's Exhibits 25</u>

Similarly, Defendant also claims Ms. Hard was not similarly situated to Plaintiff. In its own answers to Plaintiff's Interrogatories, Defendant admitted that Ms. Hard was one of the individuals who "replaced Plaintiff or assumed any of his job responsibilities."(See Plaintiff's Memorandum in Support, Ex. 2, p.6-7). Additionally, Ms. Hard's job description includes similar duties as Plaintiff's job description, including member services, manager on duty, and membership sales. (Compare Ex. 3 and Ex. 6(Ms. Hard's job description)).

As such, Plaintiff's Exhibit 25 should be admitted over Defendant's objection.

19. <u>To exclude Plaintiff's Exhibits 26</u>

Defendant also claims Mr. Clarke was not similarly situated to Plaintiff. In its own answers to Plaintiff's Interrogatories, Defendant admitted that Mr. Clarke was one of the individuals who "replaced Plaintiff or assumed any of his job responsibilities."(See Plaintiff's Memorandum in Support, Ex. 2, p.6-7). Additionally, Mr. Clarke's job description includes similar duties as Plaintiff's job description, including member services, manager on duty, and membership sales. (Compare Ex. 3 and Ex. 7 (Mr. Clarke's job description)). Finally, Mr. Clarke was moved in to said position on June 2, 2014, the same day Dan

O'Connell met with Plaintiff and told him to have the surgery performed on his knee.

Thus, Plaintiff's Exhibit 26 should be admitted over Defendant's objection.

20. To exclude Plaintiff's Exhibits 27-30

Plaintiff agrees that Defendant's tax returns are only relevant as to the issue of punitive damages. However, if the Court determines there is a basis for punitive damages under Plaintiff's claims brought pursuant to the Americans with Disabilities Act and Workers' Compensation Retaliatory Discharge, Plaintiff should be allowed to use said tax returns as an Exhibit. Further, Plaintiff understands that Defendant's tax returns are from 2010-2013. However, those are the most recent tax returns Plaintiff possesses, and therefore, Plaintiff should be allowed to use same at trial.

21. Defendant's Proposed "Roadmap" Jury Instruction

Plaintiff has no objection to Defendant's proposed "roadmap" instruction as it relates to setting forth Plaintiff's claims. However, Plaintiff objects to the inclusion of the elements of each cause of action because they are unnecessary, will confuse the jury, and because said elements will be provided to the jury before deliberations begin. Therefore, Plaintiff requests said elements be removed. Plaintiff has attached his revised "Roadmap" preliminary instruction as

Exhibit 8 and requests that it be used in place of Defendant's proposed instruction.

    22.   <u>Defendant's Memorandum Regarding Plaintiff's Potential Damages</u>

Plaintiff understands that punitive damages are not available in cases brought under the Family and Medical Leave Act. As such, Plaintiff has attached an amended Verdict Form A as Exhibit 9.

As for the remaining damages, Plaintiff asserts that the jury should only determine Plaintiff's compensatory and punitive damages. Plaintiff's lost compensation and front pay, for all three claims, should be determined by the Court. If the jury decides Plaintiff's lost compensation as it relates to his FMLA claim, and the Court is required to decide Plaintiff's lost compensation as it relates to Plaintiff's ADA or Workers' Compensation Retaliatory Discharge claims, it could lead to inconsistent and/or duplicative verdicts.

    23.   <u>Defendant's Proposed Special Verdict Forms</u>

Plaintiff objects to the use of Defendant's special verdict forms and requests Plaintiff's proposed verdict forms be used by the Court.

WHEREFORE, Plaintiff prays the Court will enter an order allowing Plaintiff to mention or otherwise convey to the jury the above listed information, prohibiting the Defendant from

mentioning or otherwise conveying to the jury the above listed information and also barring Matt Clarke as a witness.

>Respectfully Submitted,
>
>/s/ Ashton N. Nowlan_____
>Ashton N. Nowlan, No 6317933
>Londrigan, Potter & Randle, P.C.
>1227 South Seventh Street
>P.O. Box 399
>Springfield, IL 62705
>Telephone: (217) 544-9823
>Fax: (217) 544-9826
>ashton@lprpc.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on, August 10, 2017, I electronically filed the foregoing, PLAINTIFF'S RESPONSES TO DEFENDANT'S MOTION IN LIMINE, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael R. Lied
Howard & Howard Attorneys PLLC
One Technology Plaza, Suite 600
211 Fulton Street
Peoria, Illinois 61602
E-mail: mlied@howardandhoward.com

                            /s/ Ashton N. Nowlan
                            Ashton N. Nowlan, #6317933
                            Attorney for Plaintiff Dallefeld
                            LONDRIGAN, POTTER & RANDLE, P.C.
                            1227 South 7th Street, P.O Box 399
                            Springfield, Illinois 62705
                            Telephone:  (217) 544-9823
                            Fax:  (217)544-9826
                            E-Mail: ashton@lprp.com