# IN THE
# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| JASON DALLEFELD, <br><br> Plaintiff, <br><br> v. <br><br> THE CLUBS AT RIVER CITY, INC., <br><br> Defendant. | Case No. 1:15-cv-01244-JES-JEH |

## ORDER AND OPINION

Now before the Court is the Plaintiff, Jason Dallefeld's, Motion for Back Pay, Employment Benefits, Interest, Liquidated Damages, and Front Pay ("Motion for Back Pay"). (D. 56).[1] The Defendant, The Clubs at River City, Inc. ("The Clubs"), filed a Response (D. 58), as well as a Renewed Motion for Judgment as a Matter of Law. (D. 59). The Plaintiff has filed a Reply to the Defendant's Response (D. 64) and a Response to the Defendant's Renewed Motion for Judgment as a Matter of Law. (D. 66). In turn, the Plaintiff filed a Renewed Motion for Judgment as a Matter of Law (D. 62) and the Defendant filed a Response (D. 65). For the reasons set forth below, the parties' Renewed Motions for Judgment as a Matter of Law are DENIED and the Plaintiff's Motion for Back Pay is DENIED in part and GRANTED in part.

## BACKGROUND

The Court and the parties have briefed the background in this case extensively. What follows, are portions of the relevant facts pertinent to the motions presently before the Court.

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

The Plaintiff filed the instant suit in June 2015. (D. 1). He alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et. seq.*; Title I of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1211 *et. seq.*; and retaliatory discharge under Illinois common law. (D. 1 at pg. 1). The Plaintiff's FMLA claim alleged two violations: interference with his rights under FMLA and retaliation for exercising those rights.

The Plaintiff worked for the Defendant as its Director of Membership Sales. His annual salary was $46,800. He aggravated a preexisting injury to his right knee while at work. The Plaintiff's medical treatment provider, Blair Rhode, declared the Plaintiff incapable of working for the Defendant on March 26, 2014 due to his injury. The Plaintiff did not explicitly request FMLA leave and the Defendant did not offer it to him at that time. Testimony later confirmed that a Defendant employee was trained in FMLA employee rights, all employees were informed of their FMLA rights at the time they were hired, and an FMLA summary was posted at the Defendant premises. The Defendant did give the Plaintiff time off of work and paid him as if he was working until April 13, 2014. During this time, the Plaintiff went to Florida and some of the Defendant's employees noticed pictures of him on the beach that were posted on Facebook.

On May 21, 2014, Rhode issued a note stating that the Plaintiff could return to work for the Defendant on a modified light duty basis. The Plaintiff claims he immediately provided this note to the Defendant. The Defendant denies ever receiving it. The parties met on June 2, 2014 and The Clubs owner told the Plaintiff to get his knee surgery done. There was no mention of the Plaintiff being terminated.

Rhode later issued another note stating that the Plaintiff could no longer work for the Defendant on June 4, 2014. On June 13, 2014, the Defendant mailed the Plaintiff a letter terminating his employment. The letter was dated June 1, 2014. Rhode successfully performed

knee surgery on the Plaintiff on June 17, 2014. Rhode issued another modified light duty note for the Plaintiff on August 13, 2014.

In August 2017, the Court presided over the jury trial. The parties stipulated that if the Plaintiff prevailed, the Court would determine his entitlement to "lost compensation, the amount of interest, whether liquidated damages should be reduced, front pay, and reasonable attorney fees and costs of litigation." (D. 45 at pg. 8). At trial, the Plaintiff testified that he could not give tours of the Defendant's facility upon his release to light duty. While giving tours was not listed in his written job description, the Plaintiff stated that it was part of what made him good at his job, selling membership to prospective clients. After the Plaintiff rested, the Defendant orally moved for a directed verdict as a matter of law on all of the Plaintiff's counts. The Court dismissed the Plaintiff's FMLA retaliation claim but otherwise denied the Defendant's motion.

Once the remaining evidence was presented, the Plaintiff moved for judgment as a matter of law on all remaining counts. The Court denied the Plaintiff's motion. Ultimately, the jury found for the Plaintiff on his FMLA interference claim, and for the Defendant on the rest of the counts. (D. 53).

The Plaintiff filed his Motion for Back Pay shortly after the trial concluded. (D. 56). He asserts that he is entitled to a host of damages, in excess of $417,000. (D. 57 at pg. 19). The Defendant responds that the Plaintiff cannot prevail on his FMLA claim as a matter of law, and is therefore entitled to no damages. (D. 58 at pg. 2). Alternatively, the Defendant argues the damages should be limited to the 10 days in which he was authorized to work light duty while still employed by the Defendant. *Id.* at pg. 4. Both parties further assert that they are entitled to a grant of their Renewed Motions for Judgment as a Matter of Law. (D. 59; 62).

3

As an initial matter, the Court addresses the parties' Renewed Motions for Judgment as a Matter of Law. District courts may enter judgment against a party who has been fully heard on an issue during a jury trial when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law). In deciding a Rule 50 motion, the Court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could have reasonably been based on that evidence. *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012). The Court is obliged to leave such judgments undisturbed unless the moving party can show that no rational jury could have brought in a verdict against it. *Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007).

Neither of the parties in this case have convinced the Court that the jury's verdicts were irrational. As such, both parties' Renewed Motions for Summary Judgment as a Matter of Law (D. 59; D. 62) are DENIED.

## STANDARD OF REVIEW

The FMLA entitles an employee to take up to twelve weeks of leave during a twelve-month period for various reasons, including a serious health condition which makes the employee unable to perform the functions of their job. 29 U.S.C. § 2612(a)(1)(D). Once the employee returns from qualified FMLA leave, the employer must reinstate the employee to their same position, or an equivalent, without loss of seniority. 29 U.S.C. 2614. Section 2615(a)(1) makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. A violation of an employee's FMLA rights entitles the employee to damages. 29 U.S.C. § 2617.

4

If an employee is either unwilling or unable to return to work at the expiration of their FLMA leave, however, an employer can lawfully terminate their employment and the employee is not entitled to damages. *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008). As the court explained in *Franzen*:

> An employee may be entitled to both back pay and front pay as a remedy for losses flowing from an employer's interference with his substantive rights under the FMLA; however, section 2617 provides no relief unless the plaintiff can prove that he was prejudiced by the violation. We have held that a plaintiff may not collect damages for periods of time in which he otherwise would have been unable to work for the company. An employee also has no right to reinstatement—and, therefore, damages—if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job.

*Id.* (citations omitted).

In his Motion for Back Pay, the Plaintiff asserts that he is entitled to damages under the FMLA. (D. 57 at pp. 2-3). Specifically, he argues that he is entitled to $147,414.46 in back pay/lost wages and employment benefits (*Id.* at pp. 3-7), $17,589.63 in prejudgment interest (*Id.* at pp. 7-9), $165,004.08 in liquidated damages (*Id.* at pp. 9-16), and $87,371.76 in front pay (*Id.* at pp. 16-18). The Plaintiff makes his backward-looking calculations based on the assumption that he is entitled to income from May 21, 2014—the day he alleges he presented the Defendant with a light duty return to work slip—until August 17, 2017—the day the jury rendered a verdict in his favor on the FMLA interference count. *Id.* at 5. The Defendant argues, in relevant part, that "if the jury concluded that the Clubs interfered with Dallefeld's rights under the FMLA by refusing to reinstate him on light duty, its verdict cannot be upheld, as a matter of law." (D. 58 at pg. 2).

## ANALYSIS

The extent of the Plaintiff's damages in this case is a complicated equation that is highly speculative. The Defendant failed to bring up FMLA leave at a few pivotal times. As a result,

5

the Court is faced with the nearly impossible task of deciding, in hindsight, what would have happened if the Defendant had offered the Plaintiff FMLA leave and what the Plaintiff's response would have been.

The jury in this case found that the Defendant interfered with the Plaintiff's rights under the FMLA. This establishes that he was prejudiced in some way by an FMLA violation. Therefore, the benefit of the doubt on that front goes to the Plaintiff. Conversely, the jury found against the Plaintiff on all of the other counts. To maintain an FMLA interference cause of action, a plaintiff must show: (1) he was eligible for protection under the FMLA; (2) he was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) the employer denied him leave to which he was entitled. *Ridings v. Riverside Medical Center*, 537 F.3d 755, 761 (7th Cir. 2008); *see also* (D. 50 at pg. 26). The jury in this case found that the Plaintiff successfully demonstrated all five of these elements. (D. 53).

Determining the twelve weeks is more problematic. The record is clear that the Plaintiff was off work from March 26, 2014 to May 21, 2014 when he attempted to return to work on modified or light duty. He would have left work again on June 4, 2014. During this time period, there were a couple of times the Defendant could have offered the Plaintiff the opportunity to take FMLA leave for as long as 12 weeks. The first time was on March 26, 2014, when the Plaintiff first stopped working. To the Defendant's credit, they paid the Plaintiff until April 13, 2014, even though they did not have to and would not have been required to do so under the FMLA. On April 13, 2014, when the Defendant chose to stop paying the Plaintiff, they also could have offered him FMLA leave. Finally, on June 2, 2014, when the Defendant met with the Plaintiff and told him to have his surgery, they could have explained his rights under the FMLA.

6

In hindsight, if the Defendant had seized upon any of these opportunities, it would have been a more cost effective means of doing business.

The Defendant argues that the Plaintiff is entitled to no damages because he could not perform the essential functions of his job within 12 weeks of taking time off of work, the time he was entitled to take under the FMLA. (D. 58 at pg. 2). The Plaintiff returned to work with some restrictions. In fact, there is no such thing as light duty under the FMLA and an employer can lawfully terminate someone that is unable to perform their duties at the end of their FMLA leave. *James v. Hyatt Regency Chicago*, 707 F.3d 775, 781 (7th Cir. 2013). The evidence supports some of the Defendant's argument, but the Defendant speculates on the start date of the Plaintiff's leave time. This is an unknown entity due to the Defendant's error

The undisputed facts demonstrate that by June 4, 2014 at the latest, when Rhode issued a second off-duty notice for him, the Defendant should have expressly offered the Plaintiff a chance to utilize FMLA leave, in compliance with the statute. *See Burnett v. LFW, Inc.*, 472 F.3d 471, 480 (7th Cir. 2006). The Defendant did not. In light of this, the Court finds June 4, 2014 the start date of the FMLA leave and finds that the Plaintiff is entitled to 12 weeks of back pay and benefits. Accordingly, the Plaintiff would have been entitled to be off of work until approximately September 4, 2014. The record establishes that Rhode issued another light duty slip for the Plaintiff to return to work with restrictions on August 13, 2014. There is nothing in the record, however, indicating whether or not the Plaintiff would have been able to fully perform his duties by September 4.

There are a couple of complications during this time period. The Plaintiff filed for, and started collecting, unemployment in late May 2014 and the Defendant terminated the Plaintiff after telling him to have the surgery. As if these events never occurred, Rhode released the

Plaintiff back to work on August 13, 2014 with restrictions. Although the Plaintiff argues these restrictions would not have kept him from performing his prior duties, his testimony suggests otherwise. While he was hired for sales, he would at times also work as the manager on duty. This involved giving tours of The Clubs, which the Plaintiff could not do while on light duty.

While the FMLA itself does not entitle employees to pay, the Defendant's violation, in light of the jury verdict, does entitle the Plaintiff to damages. 29 U.S.C. § 2617. The Plaintiff's request for $147,414.46 is excessive and does not account for the totality of the circumstances. Using the Plaintiff's front pay and benefits calculations, but limiting him to 12 weeks of pay, the Plaintiff is entitled to $12,846.84. This figure was reached by utilizing the Plaintiff's figures of $128.22 per day in back pay (multiplied by12 weeks, $128.22 x 84 = $10,770.48) and $692.12 in health insurance benefits paid by the Defendant (multiplied by three months, $692.12 x 3 = $2,076.36). (D. 57 at pp. 5-6).[2]

The Plaintiff is also entitled to prejudgment interest on that amount. This totals $1,430.62. Again, the Court reaches this figure by utilizing the Plaintiff's provided calculations: the average prime rate (3.48%) over a period of approximately three years—3.2 (June 4, 2014 to August 17, 2017). *Id.* at 8. The full equation is $12,846.84 multiplied by 3.48% ($447.07), which is then multiplied by 3.2 years, for a total of $1,430.62.

The Court further finds that the Plaintiff is not entitled to liquidated damages. This would require a finding that the Defendant acted unreasonably and in bad faith. *Holder v. Illinois Dep't of Corr.*, 751 F.3d 486, 498 (7th Cir. 2014). While the jury returned a verdict in favor of the Plaintiff on his FMLA interference claim, there was no evidence presented at trial suggesting that the Defendant acted unreasonably or in bad faith. Rather, both parties

---

[2] The Court does not find that the Plaintiff is entitled to recover the benefits of cell phone costs, vacation pay, gym membership, or optional dental insurance.

acknowledge that upon hiring, the Plaintiff was made aware of his FMLA rights. He also testified that his supervisor encouraged him to get the surgery and that she was a decent person. According to the Plaintiff, they had a good working relationship and he did not believe she would do anything to intentionally harm him. The Defendant paid the Plaintiff for a period, March 26, 2014 to April 16, 2014, while he was off work. This was done even after learning that he went on vacation in Florida during that timeframe.

The jury found there was no retaliation due to his firing. The Plaintiff testified that he thought the confusion between the parties might have been due to the lack of communication between them at the time. Although the Plaintiff provided the Defendant with sufficient notice, the failure of the Defendant to sit down with him and explain the FMLA, under the circumstances, does not rise to the level of bad faith.

As stated above, the parties' arguments on damages are speculative. This includes the Plaintiff's remaining request for front pay. There is no guarantee that he would have been re-hired after he returned from 12 weeks of FMLA leave, whenever it would have started. Nothing in the record indicates he could return to his previous position. As such, it is far too speculative to assert that the Plaintiff would have maintained his employment with the Defendant.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Back Pay (D. 56) is GRANTED in part and DENIED in part. The Plaintiff is entitled to $12,846.84 in back pay and benefits and $1,430.62 in prejudgment interest on that amount. This fully satisfies the Plaintiff's claim for damages. The Court DENIES the Plaintiff's Motion in so far as it seeks liquidated damages and front pay. Additionally, both parties' Renewed Motions for Judgment as a Matter of Law (D. 59; D. 62) are also DENIED.

As for the Plaintiff's request for attorney fees and costs, the Court hereby orders any Motion for Attorney Fees and Costs, with supporting affidavit(s), to the Court within 14 days of entry of this order. Response to said Motion is due within 7 days.

*It is so ordered.*

Entered on October 16, 2017

    s/James E. Shadid
James E. Shadid
Chief United States District Judge